**Case No. 23-5771**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**KIMBERLY DIEI,**
**Plaintiff – Appellant,**

**v.**

**RANDY BOYD, ET AL.,**
**Defendants – Appellees.**

---

**APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**Originating District Court Case No. 2:21-cv-02071-JTF-cgc**

---

**BRIEF OF APPELLEES RANDY BOYD, ET AL.**

---

Caitlyn Luedtke Elam, Esq. (TN BPR #031108)
Associate General Counsel
UNIVERSITY OF TENNESSEE
505 Summer Place, UTT #1155
Knoxville, TN 37902
(865) 974-1653
caitlyn.elam@tennessee.edu

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____23-5771_____    Case Name: __Kimberly Diei v. Randy Boyd, et. al.__

Name of counsel: __Caitlyn Luedtke Elam, Esq.__

Pursuant to 6th Cir. R. 26.1, __Randy Boyd__
                                    *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____January 18, 2024_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Caitlyn Luedtke Elam, Esq. (BPR #031108)
University of Tennessee
505 Summer Place, UTT #1155
Knoxville, TN  37902 / (865) 974-1653

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: ___23-5771___      Case Name: __Kimberly Diei v. Randy Boyd, et. al.__

Name of counsel: __Caitlyn Luedtke Elam, Esq.__

Pursuant to 6th Cir. R. 26.1, __Christa George__
*Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____January 18, 2024_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Caitlyn Luedtke Elam, Esq. (BPR #031108)
University of Tennessee
505 Summer Place, UTT #1155
Knoxville, TN  37902 / (865) 974-1653

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................vi

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................2

   I.   Whether this Court has jurisdiction over Diei's claims seeking declaratory and injunctive relief due to Diei's graduation from UTHSC in May 2023..........................................................................2

   II.  Whether Diei's claims seeking monetary damages fail as a matter of law.....................................................................................................2

   III. Whether Boyd and George are entitled to qualified immunity as to Diei's claims seeking monetary damages.......................................2

   IV. Whether if this Court determines it has jurisdiction over all of Diei's claims, Diei's First, Second, and Third Causes of Action fail as a matter of law. ........................................................................2

STATEMENT OF THE CASE AND RELEVANT FACTS ...................................2

   I.   DIEI'S ALLEGATIONS ..................................................................2

      A.  2019 Complaint ........................................................................3

      B.  2020 Complaint ........................................................................4

   II.  PROFESSIONAL STANDARDS FOR TENNESSEE PHARMACISTS AND UTHSC PHARMACY STUDENTS ......................6

      A.  Tennessee's Professional Standards for Pharmacists..............................6

      B.  UTHSC's Professional Standards for Pharmacy Students......................7

   III. DIEI'S CLAIMS AND REQUESTED RELIEF ...........................................9

   IV. PROCEDURAL HISTORY .......................................................................11

SUMMARY OF ARGUMENT ..................................................................11

LAW AND ARGUMENT ..........................................................................13

I.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER DIEI'S CLAIMS SEEKING DECLARATORY AND INJUNCTIVE RELIEF. ..............................................................13

   A.  This Court lacks subject matter jurisdiction over Diei's mooted claims...............................................................................14

   B.  Diei's graduation moots her claims for declaratory and injunctive relief.........................................................................15

   C.  All claims for declaratory and injunctive relief are moot and should be dismissed.........................................................................18

II.  DIEI'S REMAINING CLAIMS SEEKING MONETARY DAMAGES FAIL AS A MATTER OF LAW.............................................22

   A.  Diei's First Amendment rights were not violated as the University has taken no adverse action against her. .................................................22

   B.  Diei's First Amendment rights were not violated as a University may lawfully require professional students to abide by professional standards. .................................................31

   C.  Diei cannot prove that her First Amendment rights were violated as UTHSC may investigate complaints.................................................37

III.  BOYD AND GEORGE ARE ENTITLED TO QUALIFIED IMMUNITY AS TO DIEI'S REMAINING CLAIMS SEEKING MONETARY DAMAGES.........................................................39

   A.  Diei cannot prove that her constitutional rights have been violated. ...............................................................................41

   B.  Diei's rights were not clearly established. ...........................................42

IV.  SHOULD THIS COURT DETERMINE IT HAS JURISDICTION OVER ALL OF DIEI'S CLAIMS, DIEI'S FIRST, SECOND, AND THIRD CAUSES OF ACTION FAIL AS A MATTER OF LAW..............52

   A.  Diei's Third Cause of Action fails as Diei's First Amendment rights were not violated. .................................................52

B. Diei's First and Second Causes of Action fail as UTHSC's Professionalism Rule is facially valid. ...................................................53

CONCLUSION ..........................................................................................54

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.................56

CERTIFICATE OF SERVICE ............................................................................57

ADDENDUM ............................................................................................58

I. DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ...........................................................................58

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) .............................................. 38, 45

*Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015) ................................................................................... 24, 32, 33, 34

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...........................................................42

*Andrews v. Hickman Cnty., Tenn.,* 700 F.3d 845 (6th Cir. 2012) .................... 42, 43

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).............................14

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..............................................................45

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)........................................................30

*Benison v. Ross*, 765 F.3d 649 (6th Cir. 2014) ........................................... 22, 23, 24

*Blau v. Fort Thomas Pub Sch. District.*, 401 F.3d 381 (6th Cir. 2005)...... 18, 19, 40

*Causey v. City of Bay City*, 442 F.3d 524 (6th Cir. 2006) .......................................41

*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021).....................................................40

*Cunningham v. Shelby County, Tenn.*, 994 F.3d 761 (6th Cir. 2021) ....................41

*Davis v. Colerain Township, Ohio*, 51 F.4th 164 (6th Cir. 2022) ..........................15

*DeFunis v. Odegaard*, 416 U.S. 312 (1974)..................................................... 16, 17

*Delaware State College v. Ricks*, 449 U.S. 250 (1980)..................................... 25, 26

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ...........................................44

*Doninger v. Niehoff*, 642 F.3d 334 (2d Cir. 2011) ..................................................48

*Ehrlich v. Kovack*, 710 F. App'x 646 (6th Cir. 2017) .............................................30

*Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003) .......................................................43

*Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711 (6th Cir. 2011) ................................................................................... 14, 16

*G.S. by and through Schwaigert v. Lee*, No. 2:21-cv-02552-SHL-atc, 2022 WL 1560391 (W.D. Tenn. Mar. 28, 2022) ........................................15

*Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988) ....................................41

*Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999).....................53

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...............................................40

*Harris v. Blake*, 798 F.2d 419 (10th Cir. 1986)..................................... 27, 28

*Harris v. Detroit Pub. Schs.*, 245 F. App'x 437 (6th Cir. 2007) ..................... 29, 30

*Hedrick v. W. Michigan Univ.,* No. 1:22-CV-308, 2022 WL 10301990 (W.D. Mich. Oct. 17, 2022) ........................................................... 48, 49

*Hosty v. Carter*, 412 F.3d 731 (7th Cir. 2005) ................................. 40, 45

*Hunt v. Bd. of Regents of the Univ. of New Mexico,* 792 F. App'x. 595 (10th Cir. 2019), *cert. denied*, 2020 WL 6829148 (2020)..................................... 36, 47

*In re: 2016 Primary Election*, 836 F.3d 584 (6th Cir. 2016) ..................................15

*J. Endres v. Ne. Ohio Med. Univ.,* 938 F.3d 281 (6th Cir. 2019).............. 24, 25, 26

*Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019) ........................................41

*Kanuszewski v. Mich. Dep't of Health and Human Svcs.*, 927 F.3d 396 (6th Cir. 2019)......................................................................21

*Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016)........................................... 34, 35, 36

*Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011) ....................................32

*Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996)..........................................20

*Ku v. Tenn.*, 322 F.3d 431 (6th Cir. 2003)..................................... 24, 34

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990) ....................................16

*Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.,* 942 F.3d 258 (5th Cir. 2019).........................................................48

*Machan v. Olney*, 958 F.3d 1212 (6th Cir. 2020) .....................................44

*Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2045 (2021) ............................. 44, 46

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................................................43

*McKinney v. Huntsville School Dist.*, 345 F. Supp. 3d 1071 (W.D. Ark. 2018) .....................................................................................48

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453 (6th Cir.1997) ....................................................................................16

*Mikel v. Quin*, 58 F.4th 252 (6th Cir. 2022) ...........................................21

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................41

*Morgan v. Bd. of Prof. Resp. of the Supreme Court of Tenn.*, 63 F.4th 510 (6th Cir. 2023) ...............................................................................21

*Morgan v. Swanson*, 755 F.3d 757 (5th Cir. 2014) ..................................45

*Morrison v. Bd. Of Educ. Of Boyd City*, 521 F.3d 602 (6th Cir. 2008)..................29

*National Institute of Family and Live Advocates v. Becerra*, 138 S. Ct. 2361 (2018)..........................................................................................31

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019)............................................45

*Okruhlik v. Univ. of Ark.*, 395 F.3d 872 (8th Cir. 2005).........................................24

*Oyama v. University of Hawaii*, 813 F.3d 850 (9th Cir. 2015) ........................ 32, 36

*PeTA v. Rasmussen,* 298 F.3d 1198 (10th Cir. 2002)................................. 18, 19, 20

*Radiant Glob. Logistics, Inc. v. Furstenau,* 951 F.3d 393 (6th Cir. 2020).............16

*Richmond v. Fowlkes*, 228 F.3d 854 (8th Cir. 2000)...............................................34

*Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678 (6th Cir. 2020)...........................44

*Rizzo v. Goode*, 423 U.S. 362 (1976)......................................................................40

*RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125 (6th Cir. 1996)...........................................................................................13

*S&M Brands, Inc. v. Cooper*, 527 F.3d 500 (6th Cir. 2008) ...............................21

*Salehpoor v. Shahinpoor*, 358 F.3d 782 (10th Cir. 2004) .......................................48

*Salehpour v. Univ. of Tennessee*, 159 F.3d 199 (6th Cir. 1998)............................40

*Saucier, v. Katy*, 533 U.S. 194 (2001) .......................................................43

*Sensabaugh v. Halliburton,* 937 F.3d 621 (6th Cir. 2019) ......................................30

*Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984) .......................................................25

*Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498 (1911).................................16

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) ..........................44

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ......................... 28, 29

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ......................13

*Thompson v. Ohio State University*, 92 F. Supp. 3d 719 (S.D. Ohio 2015)
   *aff'd*, 639 F. App'x. 333 (6th Cir. 2016) ...................................................... 38, 39

*Thompson v. Ohio State University*, 990 F. Supp. 2d 801 (S.D. Ohio 2014).........38

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) .........................................15

*U.S. v. Ferguson*, 868 F.3d 514 (6th Cir. 2017) .......................................................43

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)..................21

*Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S.
   748 (1976)................................................................................................................31

*Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012) ....................................... 32, 39, 40, 50

*White v. Pauly*, 580 U.S. 73 (2017) ................................................................. 45, 51

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ........................................21

*Yoder v. University of Louisville*, 417 F. App'x. 529 (6th Cir. 2011)....................17

*Yoder v. University of Louisville*, 526 F. App'x. 537 (6th Cir. 2013) . 17, 36, 42, 43,
   46

*Yoder v. University of Louisville*, No. 3:09-CV-205-S, 2009 WL 2406235
(W.D. Ky. Aug. 3, 2009) ...................................................................17

*Yoder v. University of Louisville*, No. 3:09-CV-205-S, 2012 WL 1078819
(W.D. Ky. Mar. 30, 2012) ...............................................................17

*Zimmerman v. Board of Trustees of Ball State University*, 940 F. Supp. 2d
875 (S.D. Ind. 2013). .......................................................................48

## **STATUTES**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. §1343 ....................................................................................1

42 U.S.C. § 1983 .......................................................................... 1, 10, 11

Tenn. Code Ann. § 49-9-101 *et seq* ....................................................7

Tenn. Code Ann. § 49-9-209 ...............................................................7

Tenn. Code Ann. § 63-10-202 (2020) ..................................................6

Tenn. Code Ann. § 63-10-301 *et seq*. (2020) ......................................6

Tenn. Code Ann. § 63-10-304 (2020) ..................................................6

Tenn. Code Ann. § 63-10-305 (2020) ..................................................6

## **RULES**

Tenn. Comp. R. & Regs., Rule 1140-02-.01 ....................................6, 7

Tenn. Comp. R. & Regs., Rule 1720-3-5-.01 ....................................7, 8

## JURISDICTIONAL STATEMENT

Plaintiff/Appellant Kimberly Diei ("Diei") brought this case pursuant to 42 U.S.C. § 1983 alleging that Defendants/Appellees violated her First Amendment rights while a student at the University of Tennessee's Health Science Center ("UTHSC"), a public university.  While the district court initially had subject matter jurisdiction over this entire case under 28 U.S.C. §§ 1331 and 1343, the district court ceased to have jurisdiction over Diei's claims seeking declaratory and injunctive relief upon her graduation from UTHSC in May 2023.  Therefore, this Court does not have jurisdiction to hear Diei's claims seeking declaratory and injunctive relief.

This Court does have jurisdiction over Diei's remaining claims seeking monetary damages under 28 U.S.C. § 1291 because the district court's August 3, 2023 order dismissed Diei's lawsuit in its entirety and Diei timely filed a notice of appeal on August 24, 2023.  (*Notice of Appeal*, RE 72).

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

I.     **Whether this Court has jurisdiction over Diei's claims seeking declaratory and injunctive relief due to Diei's graduation from UTHSC in May 2023.**

II.    **Whether Diei's claims seeking monetary damages fail as a matter of law.**

III.   **Whether Boyd and George are entitled to qualified immunity as to Diei's claims seeking monetary damages.**

IV.    **Whether if this Court determines it has jurisdiction over all of Diei's claims, Diei's First, Second, and Third Causes of Action fail as a matter of law.**

**STATEMENT OF THE CASE AND RELEVANT FACTS**

At the time of filing her Complaint, Diei was a student at UTHSC's College of Pharmacy.  (*Complaint*, RE 1, PageID #3-4).  Diei has since successfully completed her education at UTHSC by graduating on May 8, 2023 with a Doctor of Pharmacy degree and a Certificate of Nuclear Pharmacy. (*Exh. A Memo. in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction.*, RE 64-2, PageID #547).

I.     **DIEI'S ALLEGATIONS**

Diei alleges that UTHSC violated her constitutional rights by "policing her personal, off-campus expression on social media."  (*Complaint*, RE 1, PageID #1, ¶1).  Yet, a careful review of her Complaint shows that UTHSC simply responded

2

to complaints about her social media activity on two occasions. (*Id.*, RE 1, PageID #8, #11, ¶¶34, 55).

### A.    2019 Complaint

In September 2019, Committee Chairperson Defendant Christa George ("George") informed Diei that an anonymous individual reported her social media posts to the Professional Conduct Committee ("Committee"). (*Complaint*, RE 1, PageID #8, ¶34). On September 12, 2019, Diei appeared before the Committee. (*Complaint*, RE 1, PageID #9, ¶42). During the Committee meeting, George informed Diei that the Committee unanimously determined that Diei's social media accounts, on which she posted a video of herself removing her breast from her shirt along with other posts containing the UTHSC College of Pharmacy logos and trademarks (*Exh. 5 Memo. in Support of Motion to Dismiss Individual Capacity Defs.*, RE 24-6, PageID #212-218), violated the College of Pharmacy's professionalism policies because of the "sexual," "crude," and "vulgar" nature of her content. (*Complaint*, RE 1, PageID #9, ¶43). Due to the alleged "unprofessional" content, the Committee recommended to College of Pharmacy Dean, Marie Chisholm-Burns, that Diei write a letter reflecting on her behavior and the expectations of the College of Pharmacy. (*Complaint*, RE 1, PageID #10, ¶46). Dean Chisholm-Burns concurred with the Committee's recommendations, and informed Diei of her decision on October 14, 2019. (*Complaint*, RE 1, PageID #10, ¶47).

3

### B.    2020 Complaint

In August 2020, Diei was contacted by the Committee after receiving another complaint about her social media activity and Diei was provided a link to screenshots of posts to her Twitter and Instagram accounts. (*Complaint*, RE 1, PageID #11, ¶¶ 55-56). While only some of these screenshots were included in Diei's Complaint, Defendants included the entirety of the screenshots in their lower court briefing for completeness of the record.  (*Exh. 7 Memo. in Support of Motion to Dismiss Individual Capacity Defs.*, RE 24-8, PageID #241-256; *see also* RE 24-1, PageID #195 (citing cases that the screenshots are part of the pleadings)).  A sampling of these screenshots from Diei's social media include:





(*Id.*, RE 24-8, PageID #241-256).

Diei appeared before the Committee on September 1, 2020. (*Complaint*, RE

1, PageID #15, ¶73). Afterwards, George wrote that:

> Diei "appeared again before the Professional Conduct
> Committee on Tuesday, September 1, 2020 to address the
> recent issue of unprofessional posts to [her] social media
> accounts. Those posts again included material of a 'sexual'
> nature, as well as 'crude' and 'vulgar' statements. Further,
> the public posts included an image identifying [Diei] as a
> member of the UTHSC College of Pharmacy."

(*Complaint*, RE 1, PageID #15-16, ¶80). George then informed Diei that:

> [T]he committee has determined that [her] conduct is a
> serious breach of the norms and expectations of the
> professions, and that [she] do[es] not meet the threshold of
> professional behavior or the requirements of the Technical
> Standards for students in the UTHSC College of
> Pharmacy. The Committee voted unanimously to
> academically dismiss [Diei] from the College of Pharmacy
> effective immediately.

(*Complaint*, RE 1, PageID #16, ¶82).

George advised Diei that she had two days to appeal the Committee's

decision. (*Complaint*, RE 1, PageID #16, ¶83). Diei did appeal, and "Dean

Chisholm-Burns . . . decided to reverse the Committee's decision to expel Diei."

(*Complaint*, RE 1, PageID #17, ¶¶89, 92).

Diei "successfully appealed her expulsion." (*Complaint*, RE 1, PageID #2,

¶3). Diei did not miss any class time – "[s]he is, and was at all times relevant to the

Complaint, a student at the College of Pharmacy," which at the time she filed her

Complaint she "currently attends," and is "in good academic standing." (*Complaint*, RE 1, PageID #4-6,17, ¶¶ 9, 16, 95). She admits she "was not expelled." (*Complaint*, RE 1, PageID #18, ¶100).

## II. PROFESSIONAL STANDARDS FOR TENNESSEE PHARMACISTS AND UTHSC PHARMACY STUDENTS

The State of Tennessee developed professional standards for pharmacists. Likewise, UTHSC employs professional standards for its pharmacy students studying to enter the profession.

### A. Tennessee's Professional Standards for Pharmacists

The Tennessee legislature has declared that "[t]he practice of pharmacy within the state is . . . a professional practice affecting public health, safety and welfare and is subject to regulation and control in the public interest." Tenn. Code Ann. § 63-10-202 (2020). The legislature created a Board of Pharmacy that is authorized to deny or revoke licensure on a number of defined bases, including that the person has been guilty of "unethical or unprofessional conduct." Tenn. Code Ann. § 63-10-305(6) (2020); § 63-10-301 *et seq*. (2020). The Board "has the power and authority to adopt, amend and repeal rules of professional conduct appropriate to the establishment and maintenance of a high standard of integrity and dignity in the profession of pharmacy." Tenn. Code Ann. § 63-10-304(c) (2020). The Board has adopted "Professional Conduct and Responsibilities" rules governing pharmacists and pharmacy interns. TENN. COMP. R. & REGS., Rule 1140-02-.01. (*Exh. 1 Memo. in*

*Support of Motion to Dismiss Individual Capacity Defs.*, RE 24-2, PageID #198-

201).  One provision of the Board of Pharmacy's professionalism standards is:

> A pharmacist shall observe the law, uphold the dignity and
> honor of the profession, and accept its ethical principles.
> A pharmacist shall not engage in any activity that will
> bring discredit to the profession, and shall expose, without
> fear or favor, illegal or unethical conduct in the profession.

TENN. COMP. R. & REGS., Rule 1140-02-.01(4); (*Exh. 1,* RE 24-2, PageID #198).

### B.    UTHSC's Professional Standards for Pharmacy Students

The University of Tennessee is a public institution created by Tennessee

statutes that is governed by a Board of Trustees ("Board") which has "full power

and authority to make bylaws, rules and regulations for the government of the

university and the promotion of education in the university that in their opinion may

be expedient or necessary." Tenn. Code Ann. § 49-9-209(e)(1); s*ee* Tenn. Code Ann.

§ 49-9-101 *et seq.*  Pursuant to its statutory authority, the Board (not President Boyd,

as Diei alleges contrary to the statute) has enacted, through the Tennessee

Administrative Procedures Act rulemaking process, a rule for UTHSC entitled

"Maintenance of Ethical and Professional Standards." (*Exh. 2 Memo. in Support of*

*Motion to Dismiss Individual Capacity Defs.*, RE 24-3, PageID #203); TENN. COMP.

R. & REGS., Rule 1720-3-5-.01.    UTHSC also maintains a student handbook,

*CenterScope*, that is readily available online. A "Student Rights and

Responsibilities" link leads to a page with an index entry for "Maintenance of Ethical

and Professional Standards of the Health Professions." It links to a page which sets out UTHSC's APA Professionalism Rule contained in TENN. COMP. R. & REGS., Rule 1720-3-5-.01 (*Exh. 3 Memo. in Support of Mo. to Dismiss Individual Capacity Defs.*, RE 24-4, PageID #205-208).   UTHSC's Professionalism Rule states, in relevant part:

> **Maintenance of Ethical and Professional Standards of the Health Professions**
>
> Failure to maintain the high ethical and professional standards of the various disciplines of the health professions may subject a student to suspension or other appropriate remedial action by the University.
>
> A. A student enrolled at [UTHSC] is subject to a disciplinary action up to, and including, suspension and dismissal for engaging in the following acts of misconduct, regardless of whether such misconduct is engaged in, on, or off University-owned or controlled property,
>
> > 1. …
> >
> > 2. …
> >
> > 3. …
> >
> > 4. Other unprofessional or unethical conduct that would bring disrepute and disgrace upon both student and profession and which would tend to substantially reduce or eliminate the student's ability to effectively practice the profession in which discipline he or she is enrolled.
>
> B.  …

(*Id.*, RE 24-4, PageID #208).

Although not material to the disposition of the Defendants' motion to dismiss Diei's claims, it is fair for the Court to know that Diei was informed of University policies when she began her student career at UTHSC. On August 7, 2019, she signed a document entitled "Standards for Student Professional Conduct" (referred to by name throughout her Complaint) (*Exh. 4 Memo. In Support of Motion to Dismiss Individual Capacity Defs.*, RE 24-5, PageID #210).  It identified the relevant sources, including *CenterScope*, and Diei affirmed and signed her acknowledgement of the same.  (*Id.*, RE 24-5, PageID #210; *see also Memo. in Support of Motion to Dismiss Individual Capacity Defs.*, RE 24-1, PageID #195 (citing cases that this is part of the pleadings)).

## III.    DIEI'S CLAIMS AND REQUESTED RELIEF

Diei has brought this lawsuit suing Defendant Randy Boyd, in in his individual and official capacity as President of the University of Tennessee System ("Boyd"); Defendant Christa George, in her individual and official capacity as Chair of UTHSC's College of Pharmacy's Professional Conduct Committee; and current and now former members of the University of Tennessee Board of Trustees in their official capacities (collectively "Board").  Defendants Boyd, George, and the Board will be referred to collectively as "Defendants."  Diei asserts five causes of action against these Defendants seeking various forms of relief.

**First Cause of Action.**  Diei alleges that the professionalism policies violate her First Amendment rights and asserts a facial overbreadth challenge as to these policies against  all Defendants in their official capacities under 42 U.S.C. § 1983. (*Complaint*, RE 1, PageID #18-20, ¶¶101-112) ("First Cause of Action").  Diei seeks declaratory and injunctive relief under this claim.   (*Complaint*, RE 1, PageID #20, ¶112).

**Second Cause of Action.**  Diei alleges that the professionalism policies violate her First Amendment rights and asserts a facial vagueness challenge as to these policies against all Defendants in their official capacities under 42 U.S.C. § 1983.  (*Complaint*, RE 1, PageID #20-22, ¶¶113-125) ("Second Cause of Action").  Diei seeks declaratory and injunctive relief under this claim. (*Complaint*, RE 1, Page D #22, ¶125).

**Third Cause of Action.**  Diei alleges that all Defendants in their official capacities violated Diei's First Amendment rights in applying the professionalism policies to Diei resulting in a free speech violation under 42 U.S.C. § 1983. (*Complaint*, RE 1, PageID #20-22, ¶¶113-125) ("Third Cause of Action"). Diei seeks declaratory and injunctive relief and attorneys' fees under this claim. (*Complaint*, RE 1, PageID #25, ¶140).

**Fourth Cause of Action.**  Diei alleges that Boyd and George in their individual capacities violated Diei's First Amendment rights in applying the

professionalism policies to Diei resulting in a free speech violation under 42 U.S.C. § 1983. (*Complaint*, RE 1, PageID #25-28, ¶¶141-155) ("Fourth Cause of Action"). Diei seeks declaratory and injunctive relief, monetary damages, reasonable costs, and attorneys' fees under this claim. (*Complaint*, RE 1, PageID #28, ¶155).

**Fifth Cause of Action.** Diei alleges that George in her individual and official capacity retaliated against Diei because of her First Amendment speech and brings a cause of action under 42 U.S.C. § 1983. (*Complaint*, RE 1, PageID #28-29, ¶¶156-165) ("Fifth Cause of Action"). Diei seeks declaratory and injunctive relief, monetary damages, reasonable costs, and attorneys' fees under this claim. (*Complaint*, RE 1, PageID #29, ¶165).

## IV.    PROCEDURAL HISTORY

Defendants do not dispute the procedural history detailed in Diei's Brief. (*Diei Brief*, COA RE 20, PageID# 21-23).

## SUMMARY OF ARGUMENT

While this case originally began as a case analyzing the University's professionalism policy and its application to Diei's online, off-campus speech, since Diei's graduation, the landscape and focus of this case have drastically changed. As Diei's claims for injunctive and declaratory relief were mooted by her graduation, this Court need only focus on Diei's claims seeking monetary relief – namely her

claims alleging violation of her First Amendment rights by Boyd and Geroge in their individual capacities.

Along that vein, Diei's Brief recites broad and generalized notions of First Amendment protections related to viewpoint discrimination. This case is not about the "30,000 foot view" of First Amendment law. Rather, this case, as with all First Amendment cases, deserves a close and careful analysis of the facts and circumstances of Diei's speech and the status of the law concerning professional student speech and the ability for public professional schools to regulate off-campus, online professional student conduct.

In looking to the specific facts of this case, Diei never suffered an adverse action at the hands of UTHSC as the final decision made by UTHSC was to not expel Diei. Additionally, established law supports that professional schools have an interest in regulating professional student conduct to conform with the standards of the desired profession, including speech. Diei's claims that Boyd and George's actions violated her First Amendment rights therefore fail.

Moreover, the status of off-campus, online professional student First Amendment speech remains unsettled law, and Boyd and George are entitled to qualified immunity. Also, George could not be on fair notice that her actions being one of several committee members issuing a non-final and appealable decision were violative of Diei's rights, thereby entitling her to qualified immunity.

Finally, an analysis of the professionalism policy, when read in conjunction with established Tennessee law regulating the same or similar behaviors, shows that it is facially valid.

Accordingly, Defendants request that this Court uphold the district court's dismissal of Diei's claims in their entirety.

## LAW AND ARGUMENT

### I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER DIEI'S CLAIMS SEEKING DECLARATORY AND INJUNCTIVE RELIEF.

In every federal court lawsuit, "the first and fundamental question is that of jurisdiction." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (cleaned up).  "Where subject matter jurisdiction is challenged under Rule 12(b)(1) … the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996). While defendants can bring "facial" challenges to a plaintiff's complaint, at times courts are called upon to "weigh the evidence concerning jurisdiction presented by the parties and decide the jurisdictional facts." *Id.*  Defendants challenge this Court's subject matter jurisdiction because Diei graduated in May 2023.

While the district court analyzed and dismissed each cause of action on the merits, it also correctly determined that "Diei's claims have become moot because she has graduated from the UTHSC College of Pharmacy.  There is no realistic

expectation she will be expelled." (*Order*, RE 69, PageID #636).[1]  The district court correctly dismissed Diei's request for injunctive and declaratory relief as it applied to the Fourth and Fifth Causes of Action.  (*Order*, RE 69, PageID #636). While the district court's analysis on the merits was correct, it didn't need to even go that far. As Diei's First, Second, and Third Causes of Action seek only declaratory and injunctive relief, this Court does not have jurisdiction to consider them.  Moreover, this Court has jurisdiction over Diei's Fourth and Fifth Causes of Action only to the extent they do ***not*** seek declaratory and injunctive relief.[2]

### A.    This Court lacks subject matter jurisdiction over Diei's mooted claims.

Part of a federal court plaintiff's burden is a "cradle-to-grave requirement" to show the existence of an Article III "case or controversy." *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (cleaned up). Mootness may thus be

---

[1] The district court also held that, "Diei's fear that the Committee is likely to investigate her speech in the future and impose disciplinary actions, including expulsion, is moot because of her recent graduation." (*Order*, RE 69, Page ID #632).

[2] Diei asserts the Fifth Cause of Action against George in her individual ***and*** official capacity.  The official capacity claim merits dismissal for lack of subject matter jurisdiction as it can only seek declaratory and injunctive relief.

thought of as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (cleaned up). A case becomes moot if, "although an actual case or controversy once existed, changed circumstances have intervened to destroy standing." *In re: 2016 Primary Election*, 836 F.3d 584, 588 (6th Cir. 2016).

"A mootness finding deprives a court of subject-matter jurisdiction," *Davis v. Colerain Township, Ohio*, 51 F.4th 164, 175 (6th Cir. 2022), and for that reason "[a] mootness challenge is properly addressed as a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *G.S. by and through Schwaigert v. Lee*, No. 2:21-cv-02552-SHL-atc, 2022 WL 1560391 at *4 (W.D. Tenn. Mar. 28, 2022).

**B.     Diei's graduation moots her claims for declaratory and injunctive relief.**

U.S. Supreme Court and Sixth Circuit decisions establish the rule of law that when a plaintiff-student seeks declaratory or injunctive relief challenging school policies, the plaintiff-student's claims for such relief become moot when the student graduates from the school whose policies the student is challenging. Diei admits that "her graduation moots her claims for prospective injunctive relief." (*Diei Brief*, COA RE 20, PageID #59).   However, she contends that "claims for retrospective

15

declaratory relief continue to present a live controversy so long as they are tied to a claim for damages." (*Diei Brief*, COA RE 20, PageID #71). This is incorrect.

In *DeFunis v. Odegaard*, 416 U.S. 312 (1974), the Supreme Court found a law student's challenge to a university's admission policy moot due to his attendance at the law school (achieved through court order) and likely graduation. Notably, the *DeFunis* court declined to apply the "capable of repetition, yet evading review" mootness exception that would allow "federal adjudication even though it might otherwise be considered moot." *Id*. at 319 (citing *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). The Court held that "just because this particular case did not reach the Court until the eve of the petitioner's graduation from Law School, it hardly follows that the issue he raises will in the future evade review." *Id.* Like the plaintiff-student in *DeFunis*, Diei is no longer a UTHSC College of Pharmacy student subject to its policies. Since *DeFunis* "lower courts have marched in the same direction in other school-graduation cases" in refusing to apply the capable of repetition yet evading review mootness exception.[3]

---

[3] *See e.g. Fialka-Feldman,* 639 F.3d 711; *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir.1997) (en banc). In at least one case, this Court suggested in dictum that this mootness exception could apply to college graduation dates. In *Radiant Glob. Logistics, Inc. v. Furstenau,* 951 F.3d 393, 396 (6th Cir. 2020), a case challenging an injunction issued in an employment non-compete case, this Court stated, "But this narrow exception applies to disputes that by their nature will become moot before litigation runs its course, such as a college graduation date, and thus are 'likely forever' to evade appellate review." *Id.* (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481–82 (1990)). Unlike the other cases

In *Yoder v. University of Louisville*, a nursing student was dismissed from the program because of content she posted to her social media account. The case went on for years, and for some time an injunction requiring the student's readmission into the nursing program was in place that "reinstated [student] as a student at the [School of Nursing] and allowed [her] to return to classes." No. 3:09-CV-205-S, 2009 WL 2406235, at *7 (W.D. Ky. Aug. 3, 2009). Nearly two years later, that ruling was reversed by this Court in *Yoder v. University of Louisville*, 417 F. App'x. 529 (6th Cir. 2011). Upon remand, the student had graduated, having attended while the injunction was in place. *Yoder v. University of Louisville*, No. 3:09-CV-205-S, 2012 WL 1078819 (W.D. Ky. Mar. 30, 2012). Accordingly, the district court dismissed her claims for injunctive and declaratory relief as moot, a decision this Court affirmed on appeal: "We agree . . . with the district court's conclusion that Yoder's claim ***for injunctive and declaratory*** relief against the [defendants] fails. . . . Yoder's injunctive claim for reinstatement is moot as a result of her graduation from the [School of Nursing] program." *Yoder v. University of Louisville*, 526 F. App'x. 537, 543 (6th Cir. 2013) (citing *DeFunis*, 416 U.S. at 319-20 & n.2 (emphasis added)).

---

cited herein, however, *Reliant* did not involve student challenges to school policy – all of which expressly declined to apply the mootness exception.

**C.    All claims for declaratory and injunctive relief are moot and should be dismissed.**

> **1.    Diei's attempt to distinguish her claims for prospective and retrospective declaratory relief fails.**

In Section V(A) of her brief, Diei admits that her graduation mooted her claims for prospective injunctive relief.  However, she maintains:

> Diei's claims for damages and retrospective declaratory relief present a live dispute for two reasons.  First, Diei's graduation in May 2023 does not moot her claim for retrospective relief in the form of damages.  Second, the three declaratory judgments Diei seeks in her  complaint are based on the Defendants' same conduct that supports her claim for damages.

(*Diei Brief*, COA RE 20, PageID #70) (internal citations omitted).  In support of this statement, Diei cites two cases – *Blau v. Fort Thomas Pub Sch. District.*, 401 F.3d 381 (6th Cir. 2005), and *PeTA v. Rasmussen,* 298 F.3d 1198 (10th Cir. 2002).  These cases do not stand for the proposition Diei claims, and no live dispute remains.

In *Blau*, the parent of a middle school student brought a § 1983 claim challenging the school's dress code as a violation of the students' First Amendment free speech clause and Fourteenth Amendment due process clause.  During the pendency of the case, the plaintiff-student matriculated to high school and was no longer subject to the middle school's dress code.  The defendants argued that the court no longer had jurisdiction over the dispute.  However, this Court aptly noted:

> But in bringing this claim, [parent] not only sought injunctive and declaratory relief but also sought damages as well.  Thus, even if [student's] matriculation from

18

> middle school to high school mooted the claim for
> injunctive and declaratory relief (a point we need not
> decide), the existence of a damages claim ensures that this
> dispute is a live one and one over which Article III gives
> us continuing authority.

*Blau,* 401 F.3d at 387 (citations omitted).  This Court expressly declined to opine as to the existence of the injunctive and declaratory relief claims, finding that it maintained jurisdiction over the dispute due to the existence of the damages claim and therefore analyzed the merits of the First Amendment claim.  This Court did not hold that the student's move to high school did not moot her claim for retrospective declaratory relief.  *Id.* at 387-397.

Diei also cites *PeTA v. Rasmussen,* 298 F.3d 1198 (10th Cir. 2002), writing "Diei acknowledges that her graduation moots her claims for prospective injunctive relief.  But claims for retrospective declaratory relief continue to present a live controversy so long as they are tied to a claim for damages." (*Diei Brief*, COA RE 20, PageID #71).  Diei misstates *PeTA*'s holding as that court did not find a viable declaratory judgment claim at all.  The court actually held "PeTA has standing to assert its claim [singular] for retrospective [it does not say 'declaratory'] relief," meaning the damages claim.  At no point does the court identify the retrospective claim as the claim for declaratory relief.  Instead, the court clearly stated that "PeTA has standing ***only*** in regard to its claim that it is entitled to monetary damages," and

described the declaratory judgment claim as "superfluous." *Id.* at 1203 and n.2 (emphasis added).

Diei's citations provide no support for disregarding this Court's consistent rulings related to a student's graduation mooting claims for both injunctive and declaratory relief. *See* Section I(B) *supra*; *see also Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996).

### 2. Diei's claims for retrospective declaratory relief are barred by the Eleventh Amendment.

Diei argues that she is entitled to retrospective declaratory relief on her facial claims against the Board, George, and Boyd in their official capacities. (*Diei Brief*, COA RE 20, PageID #70).[4]  She contends that she has "standing to assert her claims for retrospective relief" related to her claims that "Defendants unconstitutionally applied the policy to her speech on social media; the policy is vague; and the policy is overboard." (*Diei Brief*, COA RE 20, PageID# 71).[5]  The courts make no distinction relative to prospective and retrospective declaratory relief when it comes to mootness. *See* Section I(B) and I(C)(1) *supra*.  Even if this Court is inclined to find such a distinction, Diei's claims are barred by the Eleventh Amendment.  Diei's argument fails either way.

---

[4] Diei's official capacity claims include the entirety of her Third Cause of Action and part of her Fifth Cause of Action against George.

[5] Notably Diei seems to be melding her facial challenge to the policy with her "as applied" First Amendment violation with this statement.

The Eleventh Amendment to the United States Constitution precludes a §
1983 suit against the State and likewise prevents an ***official*** capacity suit against a
state actor. That is because "a suit against a state official in his or her official capacity
is not a suit against the official but rather is a suit against the official's office. As
such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of
State Police*, 491 U.S. 58, 71 (1989). But there is an exception for prospective relief.
"'Under the *Ex parte Young* exception, a federal court can issue ***prospective***
injunctive and declaratory relief compelling a state official to comply with federal
law . . . . The *Ex parte Young* exception ***does not***, however, ***extend to any retroactive
relief***.'" *Kanuszewski v. Mich. Dep't of Health and Human Svcs.*, 927 F.3d 396, 417
(6th Cir. 2019) (emphases added) (quoting *S&M Brands, Inc. v. Cooper*, 527 F.3d
500, 507-08 (6th Cir. 2008)).  The *Ex parte Young* doctrine is limited to alleged
"***ongoing*** violations of federal law." *Morgan v. Bd. of Prof. Resp. of the Supreme
Court of Tenn.*, 63 F.4th 510, 515-16 (6th Cir. 2023) (emphasis added).  In short,
"*Ex parte Young* applies ***only when a plaintiff targets 'an ongoing violation of
federal law and seeks' prospective relief***." *Mikel v. Quin*, 58 F.4th 252, 256-57 (6th
Cir. 2022) (emphasis added) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of
Md.*, 535 U.S. 635, 645 (2002)).

There is no need for this Court to entertain Diei's distinction between
prospective claims and retrospective claims, because Diei's argument fails either

way.  If the official capacity declaratory judgment claims seek prospective relief, she concedes they are moot; if they seek retrospective relief, they are barred by the Eleventh Amendment.

## II.    DIEI'S REMAINING CLAIMS SEEKING MONETARY DAMAGES FAIL AS A MATTER OF LAW.

Considering the mootness of Diei's claims seeking declaratory and injunctive relief, this Court is left analyzing Diei's Fourth and Fifth Causes of Action to the extent they seek monetary damages. Her allegations fail as a matter of law.

### A.    Diei's First Amendment rights were not violated as the University has taken no adverse action against her.

Diei "was not expelled" (*Complaint*, RE 1, PageID #18, ¶100) from the UTHSC College of Pharmacy because she "successfully appealed her expulsion." (*Id*., PageID #2, ¶ 3). UTHSC's final action was to ***not*** expel her, and while awaiting that final action she did not miss a single minute of class. (*Id*., PageID #3-4, 6, 17, ¶¶ 9, 16, 95). If Diei did not suffer any adverse action, her claim fails.

In *Benison v. Ross*, Dr. Kathleen Benison, a tenured professor at Central Michigan University, requested a promotional pay supplement. 765 F.3d 649, 653 (6th Cir. 2014). Her "department recommended denying her application for a salary supplement, and the reviewing dean agreed. [Benison] appealed their recommendations to the provost, but she resigned before he could render a final decision." *Id*. She sued, alleging among other things that the denial of the pay

supplement was retaliation against her in violation of the First Amendment because her husband, a CMU student, had sponsored a no-confidence resolution against CMU's provost and president. *Id*. This Court affirmed the dismissal of this claim on summary judgment based on Benison's failure to complete the internal appeals process, explaining:

> The negative recommendations of the . . . Department and Dean Davison regarding Kathleen's application for a promotional pay supplement are not adverse actions because Kathleen resigned before CMU made a final decision to deny her request for a salary increase. Tenure decisions and other promotional "decisions in an academic setting involve a combination of factors which tend to set them apart from employment decisions generally." *Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 545 (6th Cir. 1999) (internal quotation marks omitted). In *Dobbs-Weinstein*, we held that a dean's decision to deny tenure to a professor was not an adverse action because it was not an "ultimate employment decision":
>
> > Because tenure decisions are so complex and potentially contentious, universities are well-served to have a grievance procedure for individuals wishing to appeal any of the many intermediate decisions or evaluations made during the tenure review process. [When a university] employs such a process, [it] allow[s] [a professor] to prevent [a negative] interim decision from becoming final.
>
> *Id*. at 545; *see also Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 879 (8th Cir. 2005) ("***[A] university should have the opportunity to correct errors through its complete internal appeals process that precedes its final decision***."); *Howze v. Va. Polytechnic & State Univ.*, 901 F. Supp. 1091, 1097 (W.D. Va. 1995) ("[W]here the tenure decision was following the chain of appeal, each decision

> along the way is not actionable. ***Only the final decision is
> the ultimate act***.") The same principle is applicable to
> "[i]ntermediate decisions in a promotion process [which]
> do not constitute independent adverse employment actions
> unless they directly influence the decisionmaker's choice
> [to deny promotion.]" *Okruhlik*, 395 F.3d at 879-80.

*Id*. at 659-60 (emphases added). *Benison* involved a claim by a faculty member, but

its policy rationale applies and has been equally applied to students. Just as

evaluating a faculty member's performance involves making judgments about

academic matters, so does evaluating a student's professionalism, for this Court has

held that a determination about professionalism is an "academic judgment." *Al-

Dabagh v. Case Western Reserve University*, 777 F.3d 355, 360 (6th Cir. 2015); *Ku

v. Tenn.*, 322 F.3d 431, 436 (6th Cir. 2003).   Further, this Court recognized the

Eighth Circuit's holding that a "'university should have the opportunity to correct

errors through its complete internal appeals process that precedes its final decision,'"

and that can happen only if courts dismiss claims about alleged errors that are

corrected in a final decision. *Benison*, 765 F.3d at 659 (quoting *Okruhlik v. Univ. of

Ark.,* 395 F.3d 872, 879 (8th Cir. 2005)).

  This Court applied the finality concepts of tenure employment decisions to a

university student conduct case in *J. Endres v. Ne. Ohio Med. Univ.,* 938 F.3d 281,

285 (6th Cir. 2019).   In *Endres*, a medical student ("Endres") was dismissed from

the university for cheating. Endres brought claims under § 1983, alleging deprivation

of property and liberty interests, and under the ADA based on his ADHD.   The

24

district court dismissed Endres' lawsuit finding that it was untimely as it had been filed more than two years[6] after Endres' first hearing before the university's Committee on Academic and Professional Progress ("CAPP"). The question before this Court, which reversed the district court, was when the statute of limitations began to run – or, put differently, "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 292 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). The parties ultimately agreed that "the injury triggering the suit is Endres' dismissal from [the university]." *Id.* The defendant university argued that Endres' limitations period began at the conclusion of the first CAPP hearing thus time-barring the claim. Endres argued that the limitations period began at the conclusion of the second CAPP hearing making the claim timely.

To determine when Endres' cause of action accrued, this Court turned to *Delaware State College v. Ricks*, 449 U.S. 250, 254 (1980), in which the Supreme Court held that a college professor's employment discrimination claim was time-barred. This Court noted that the Supreme Court held "the limitations period began when the college communicated to [the professor] its final, official decision to deny him tenure," not his last day of employment which occurred later.[7] *Endres*, 938 F.3d

---

[6] Ohio's statute of limitations for § 1983 and ADA claims is two years. *Endres*, 938 F.3d at 292.

[7] Although denied tenure, the professor remained employed as the college "had a policy of providing junior faculty members who had been denied tenure with a

25

at 293 (citing *Ricks*, 449 U.S. at 259). This final decision came after the college "had established its official position – and made that position apparent to [the professor]." *Id.* (quoting *Ricks*, 449 U.S. at 259). The official position came after a lengthy process including two reviews by the tenure committee, the Faculty Senate, and the Board of Trustees. *Id.*

This Court in *Endres* found the defendant university's argument that the injury occurred after CAPP made its first decision was unpersuasive. It stated "for that argument to hold any weight, we would have to ignore the existence of [the university's] appeals procedure." *Id.* at 293. Ultimately, Endres requested that the Executive Review Committee ("ERC") consider an appeal and the ERC "remanded the matter to CAPP, giving Endres a second chance to defend himself against allegations of misconduct." *Id.* This Court held the university "did not reach a final decision—and communicate that decision to Endres—until it informed him on November 19 that the second CAPP panel voted to dismiss him, at which point Endres had exhausted the appeals process." *Id.* Therefore, Endres did not know or have reason to know of the injury that is the basis of his action until November 19 "when Endres learned that the second CAPP panel issued a ***final, non-appealable decision*** recommending his dismissal," *id.* at 296 (emphasis added), making his

---

one-year terminal contract and [the plaintiff] received one of those contracts." *Endres*, 938 F.3d at 293.

lawsuit filed within two years of that final action timely. In applying this logic to this case, Diei failed to suffer any injury/adverse action because the final, non-appealable decision was for her to remain at UTHSC.

In *Harris v. Blake*, 798 F.2d 419 (10th Cir. 1986), a graduate student's teacher put a letter in his file that assessed him as incompetent and unethical based on her observations. This letter was seen by his later teachers and may have affected the grades they gave him – grades that went below the required minimum GPA and compelled him to withdraw. After he received the lower grades and withdrew, he found out about the letter, and the university allowed him to appeal everything. The outcome of the appeal confirmed the grades he was given. He sued, claiming constitutional due process violations. The Tenth Circuit acknowledged he presented triable factual issues about the legality of the original letter and its effect on his grades, but affirmed summary judgment dismissal of the lawsuit because the later appeals process provided the required due process and cured the initial wrongdoing. The Tenth Circuit explained:

> Harris was given the opportunity to challenge the letter and the grades before the Academic Appeal Board. It is the Board's decision that ultimately resulted in Harris' forced withdrawal, and Harris has failed to show that this decision was not made with conscientious deliberation through the exercise of professional judgment [the due process standard from *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985)]. It is undisputed that unbiased faculty members have considered Harris' case and have exercised their own judgment concerning

> the propriety of the grades that compelled his withdrawal. Accordingly, Harris has failed to support the alleged denial of substantive due process.

*Id*. at 425.

The lawfulness of the "final decision" and "ultimate act" is what matters. *Benison* shows that when a person does not appeal, her lawsuit is dismissed because she failed to receive the university's final decision. *Endres* shows that this requirement of a final, non-appealable decision is applicable to student conduct cases and that the injury or adverse action does not occur until the final, non-appealable decision is made. *Harris* shows that when an improper action is taken at a lower level, there is no valid lawsuit if, on appeal, the final decision is lawful in a way that cures the prior wrongdoing even if the person loses the appeal.

Although the issue of whether there was an adverse action is the primary basis of the Defendants' motion to dismiss the damages claims, Diei devotes only about one page of her brief to it. (*Diei Brief*, COA RE 20, PageID #56-57). She addresses ***none*** of the cases cited above (all of which were cited extensively below). Instead, she cites *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019), for the proposition that a student facing a threat of potential punishment can be "chilled" in their speech. (*Id*., PageID #56 & 66). *Speech First* dealt only with the question of whether a plaintiff has suffered a sufficient injury to have ***standing*** to make a ***facial*** challenge to a policy; it contains no holding at all about – and does not even purport

to address – what constitutes an adverse action that could violate the First Amendment on the **merits**, and it specifically disclaimed applicability to **as-applied** claims.  *See Speech First*, 939 F.3d at 766 (distinguishing *Morrison v. Bd. Of Educ. Of Boyd City*, 521 F.3d 602 (6th Cir. 2008), because it involved an as-applied claim).

The chilling effect of what Diei calls "the *specter* of expulsion" is not always the standard courts have employed in cases involving alleged First Amendment violations.  Instead, courts apply the chilling standard in appropriate contexts.  In the academic context, this Court has repeatedly expressed a reluctance to second-guess academic decisions, and has applied the general standard in a way that establishes a rule that courts allow academic institutions to finish their decision making process before considering the chilling effect of the *final* action taken, thus avoiding the need to second-guess academic decisions that come out in favor of the plaintiff and thus do not need to be second-guessed. As a result, because the final decision here to **not** expel Diei would not result in chilling her speech, Diei suffered no adverse action entitling her to relief.

Putting the "chilling" standard into its appropriate context is nothing new and is supported by existing Circuit case law. In *Harris v. Detroit Pub. Schs.*, 245 F. App'x 437 (6th Cir. 2007), this Court stated:

> "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting—whether activity is

'protected' *or an action is 'adverse' will depend on context*."

*Id*. at 443 (quoting *Bell v. Johnson*, 308 F.3d 594, 602-03 (6th Cir. 2002) (emphasis added)). This Court found that the plaintiff, a public school principal, failed to demonstrate an adverse action occurred with regard to his First Amendment retaliation claim. This Court confirmed that suspension with pay pending an investigation into suspected wrongdoing was not an adverse action for the purposes of a First Amendment claim.

Similarly, in *Sensabaugh v. Halliburton,* 937 F.3d 621, 628 (6th Cir. 2019), this Court upheld a finding that a Letter of Reprimand did not amount to an adverse action for First Amendment purposes. In *Sensabaugh*, the public employee plaintiff made two Facebook posts that were critical of the school district but also posted a photo showing a child's face that could breach confidentiality. The school district issued a Letter of Reprimand which "recounted the incidents leading up to its issuance, placed [plaintiff] on administrative leave pending a full investigation by an independent law firm, and warned [plaintiff] that termination of his employment was possible." *Id.* at 626. This Court upheld the district court's determination that the Letter of Reprimand was not an adverse action stating that "a suspension with pay does not constitute an adverse action." *Id.* (citing *Ehrlich v. Kovack*, 710 F. App'x 646, 650 (6th Cir. 2017) (holding "being placed on paid administrative leave

while an investigation is conducted into suspected wrongdoing is not an adverse action" in relation to a First Amendment retaliation claim)).

If an employee facing *potential termination* is not chilled from exercising their First Amendment rights, then it stands to reason a student facing *potential expulsion* (the student equivalent of being terminated from employment) is not either. As a result, Diei's potential expulsion did not amount to an adverse action for the purposes of her First Amendment claims.

**B.    Diei's First Amendment rights were not violated as a University may lawfully require professional students to abide by professional standards.**

Fundamentally, Diei's lawsuit challenges the very notion that her professionalism may be regulated. But "States may regulate professional conduct, even though that conduct incidentally involves speech." *National Institute of Family and Live Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018). And institutions of professional higher education may impose professionalism standards upon their students, requiring their students to adhere to the professional standards of the profession they are preparing to enter. Indeed, it has long been standard for pharmacy students in particular to be "trained in the ethics of the profession." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 751 (1976). A university's teaching and requiring adherence to such professional standards serves a "legitimate pedagogical concern in teaching its students to comply with"

the code of ethics in their field. *Keeton v. Anderson-Wiley*, 664 F.3d 865, 876 (11th Cir. 2011). Assessment of a student's professionalism involves an institutional discharge of a responsibility toward society, for professional "certification programs are designed to ensure that . . . students meet the professional standards in their chosen fields," such that when a university "communicates to the world that, in its view, that student is fit to practice the profession . . . , the [u]niversity places its 'imprimatur' on each student it approves." *Oyama v. University of Hawaii*, 813 F.3d 850, 862, 870 (9th Cir. 2015).  And students "are not forced to be there," *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012) – by deciding to enter a profession and attend a school to prepare them for licensure in that profession, a student is choosing to voluntarily submit to the regulation of that profession.

Diei uses broad First Amendment speech principles regarding viewpoint discrimination to make sweeping generalizations about a student's First Amendment right to post on social media. She continues to rely on this Court's 2012 ruling in *Ward*, incorrectly contending that it holds that a public school may not discipline students for violations of professional conduct rules when the student's speech is implicated.  As discussed in Section III(B)(3) *infra* (pages 49-50), this Court's holding in *Ward* does not stand for this broad concept.

Diei attempts to distinguish this Court's holding in *Al-Dabagh*, 777 F.3d 355, for the prospect that a university can punish a student's conduct but not a student's

32

speech. (*Diei Brief*, COA RE 20, PageID #33).  The juxtaposition of *Ward* and *Al-Dabagh* does not create this bright-line distinction as Diei contends.  Rather, *Al-Dabagh* only further illustrates a university's responsibility to prepare its professional students for the professionalism rules and boundaries its students will encounter in the real world.

In *Al-Dabagh*, a medical student was dismissed and denied graduation due to professionalism issues such as tardiness to class, propositioning a classmate for sex at a dance, and driving while intoxicated. As part of its curriculum, Case Western imposed a professionalism requirement on its medical students. Among those standards was that students "[c]onsistently demonstrate[] ethical, honest, responsible and reliable behavior." 777 F.3d at 357.  To graduate, medical students had to receive the endorsement of a "Committee on Students," a group of faculty and administrators which assessed each "student's exam scores, clinical performance, and 'professional attitudes and behavior.'" *Id*.  "A student [could not] receive a degree without the Committee's approval, good grades notwithstanding." *Id*.  That was Al-Dabagh's fate – "the only thing standing between [him] and a diploma [was] the Committee on Students' finding that he lack[ed] professionalism." *Id*. at 359. Despite his good grades and his completion of all the necessary coursework, he was not awarded an M.D. This Court held that assessment of a student's professionalism is an "academic judgment" to which courts should defer, and this Court did defer to

33

Case Western's judgment about Al-Dabagh's professionalism and ordered dismissal of the lawsuit. *Id*. at 359-61.

This Court emphasized the importance of assessing the professionalism of future professionals while they are still students:

> It is entirely reasonable to assess the presence of professionalism early. For once a medical student graduates, we must wait for a violation before we may punish the absence of it.

*Id*. at 360. *See also Ku*, 322 F.3d 431 (upholding removal of medical student from rotations for reasons including "'unprofessional conduct,'" "his inability to interact with others in a basic professional manner;" characterizing the "decision [as] an academic one"). *See also Richmond v. Fowlkes*, 228 F.3d 854, 855, 858 (8th Cir. 2000) (upholding summary judgment dismissing a pharmacy student's constitutional claims and finding "attributes of professionalism are properly considered to be "academic" and "scholastic in nature").

The Eighth Circuit expressly rejected Diei's conduct versus speech distinction in *Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016). In *Keefe*, the court confronted the exact question raised by Diei here: May a graduate school's professionalism standards be applied to speech? The court's answer was "yes." In *Keefe*, a nursing student was removed from the program for "behavior unbecoming of the profession and transgression of professional boundaries." *Id*. at 525. He had posted material on his Facebook page that "raised concerns about his professionalism and boundary

issues." *Id*. at 526.  These included posts about giving those who used an electric pencil sharpener during class "a hemopneumothorax," about "using whiskey for anger management," and also "swearing, and calling a fellow student a 'stupid bitch,'" all of which Keefe considered to be jokes. *Id*. at 527.  Invoking the Nurse's Association Code of Ethics, the school dismissed Keefe from the program. He sued, alleging a First Amendment violation. Like Diei, Keefe argued that public institutions could not investigate or discipline students for off-campus speech unless it is unprotected by the First Amendment.  The court rejected this argument: "To our knowledge, no court has adopted this extreme position, and we decline to do so." *Id*. at 529.  The court, citing six federal courts of appeals decisions, noted that "[m]any courts have upheld enforcement of academic requirements of professionalism and fitness, particularly for a program training licensed medical professionals." *Id*. at 530.  The fact that such professionalism requirements may regulate a student's speech is both acceptable and inevitable, for "determinations of non-compliance ***will almost always*** be based at least in part on a student's speech." *Id*. (emphasis added).

The fact that the speech regulated by such professionalism requirements may be a student's "on-line, off-campus" speech is also acceptable. As the *Keefe* court explained:

> A student may demonstrate an unacceptable risk of
> professionalism off campus, as well as in the classroom,

> and by speech as well as conduct. [citations, including to *Yoder*.] Therefore, college administrators and educators in a professional school have discretion to require compliance with recognized standards of the profession, both on and off campus, "so long as their actions are reasonably related to legitimate pedagogical concerns.' *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988)."

*Id*. at 531. *See also Oyama*, 813 F.3d at 869 ("The First Amendment does not prevent the University from denying Oyama's student teaching application after determining that his statements reflected a failure to absorb . . . defined and established professional standards."). *See also Yoder*, 526 F. App'x. 537 (Section III(B)(2) *infra*); *Hunt v. Bd. of Regents of the Univ. of New Mexico*, 792 F. App'x. 595 (10th Cir. 2019), *cert. denied*, 2020 WL 6829148 (2020), (Section III(B)(2) *infra*).

In all of these cases, the university won. These cases teach that (1) institutions of higher education may require their professional students to adhere to the professional standards of the profession they are preparing to enter; (2) those professional standards may regulate conduct that involves speech; and (3) the speech that may be permissibly regulated includes off campus, on-line speech such as social media posts.

The Amici's brief argues that cases like *Al- Dabagh*, *Keefe*, and *Hunt* are distinguishable because Diei's speech was "pure speech." (*Amici Brief*, COA RE 21, PageID #15-17). The Amici contend the cases are inapt because they involved

student conduct and those that involved speech involved speech directed at classmates. The Amici, however, fail to recognize this Circuit's deference to a professional school's "academic judgment" when assessing a student's professionalism. In the present case, all actions by the Committee to assess Diei's professionalism were related to the Committee's assessment of Diei's conduct within the confines of the professional standards – i.e.: academic judgment.

### C.    Diei cannot prove that her First Amendment rights were violated as UTHSC may investigate complaints.

Perhaps recognizing she has no claim over a near-expulsion that did not happen, Diei pushes the legal envelope by moving her claim back a step, to the investigation that led to her near-expulsion. She boldly asserts that "it is clearly established that even the initiation of a disciplinary investigation chills speech," (*Diei Brief*, COA RE 20, PageID #59; 65-66), and that "public institutions cannot [even] investigate . . . students for speech protected by the First Amendment." (*Complaint*, RE 1, PageID #1, ¶1) This is legally incorrect. In addition to imposing professionalism standards, a university may lawfully investigate complaints that the standards have been violated. Indeed, the cases cited above are inexplicable if a university is not allowed to investigate anything about a student's speech – the schools could not have reached the point of dismissing a student from a nursing program (*Yoder*, Section III(B)(2) *infra*), or imposing a professionalism enhancement program (*Hunt*, Section III(B)(2) *infra*), without first having

investigated the matter, because otherwise how would they have known about it? *See also Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) (finding university's investigation of student group's "Free Speech Event" lawful and not a First Amendment violation).

Defendants have already addressed *Speech First v. Schlissel*, and Diei ignores the outcome of the other case she relies upon in advancing this novel theory, *Thompson v. Ohio State University*, 990 F. Supp. 2d 801 (S.D. Ohio 2014) ("*Thompson I*"). In that case, the plaintiff alleged that a faculty member, Dr. Salimbene, "brought student misconduct charges against Plaintiff in retaliation for Plaintiff's complaints [of alleged race discrimination] . . .," *id.* at 809, and those charges resulted in Plaintiff's suspension and delayed graduation. *Id.* at 807. The case is distinguishable from Diei's: (1) George is not alleged to have filed any charges against Diei, but rather simply to have done her job in chairing the committee that evaluated complaints made by others, (*Complaint*, RE 1, PageID #11, ¶ 55 (the process began with a "complaint" "received" by George)); and (2) the end result of the process was that no discipline was imposed on Diei compared to the suspension the *Thompson* plaintiff received. And a later opinion in *Thompson* highlights the first of those distinctions and casts doubt on its original ruling. In *Thompson v. Ohio State University*, 92 F. Supp. 3d 719 (S.D. Ohio 2015) ("*Thompson II*"), *aff'd*, 639 F. App'x. 333 (6th Cir. 2016), the court dismissed the

lawsuit on summary judgment. In *Thompson II*, the court ruled that Dr. Salimbene's "attendance at and participation in the [Office of Student Conduct] panel hearing [that found Plaintiff guilty] did not cause a legally cognizable injury to Plaintiff." *Id*. at 733-34. The court backed away from its earlier ruling about the initiation of the disciplinary process:

> It is entirely unclear whether the fact that Plaintiff had an entity investigate her – independent from the charges and suspension that resulted – is more than a *de minimis* injury. But the court need not address that issue. Because Dr. Salimbene concedes that her referral constitutes an adverse action, the Court will ***assume without deciding*** that Plaintiff meets the second prong of the First Amendment retaliation test [the requirement of an adverse action].

92 F. Supp. 3d at 734 (emphasis added). Then the court ***granted qualified immunity***, ruling that ***any "right to be free from a retaliatory investigation" is not clearly established***. *Id*. at 734-35.

## III.  BOYD AND GEORGE ARE ENTITLED TO QUALIFIED IMMUNITY AS TO DIEI'S REMAINING CLAIMS SEEKING MONETARY DAMAGES.

Should this Court find that Diei's claims seeking monetary damages survive, Boyd and George are entitled to qualified immunity as to these claims. The qualified immunity doctrine "shields government officials from monetary damages, not from injunctive relief." *Ward*, 667 F.3d at 742. Due to the mootness of Diei's claims seeking injunctive relief (official capacity claims), the only remaining causes of action that this Court must analyze are Diei's causes of action seeking monetary

39

damages (individual capacity claims).  *Blau*, 401 F.3d at 387-88 (First Amendment damages claim could go forward even if injunctive relief claim was mooted by student's graduation).  Diei's Fourth and Fifth Causes of Action seek monetary damages and allege First Amendment rights violations against Defendants Boyd[8] and George in their individual capacities. (*Complaint*, RE 1, PageID #25-29, ¶¶141-165).[9]

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This principle applies to University of Tennessee officials. *Garvie v. Jackson*, 845 F.2d 647 (6th

---

[8] While Boyd is entitled to qualified immunity based on the arguments set forth in Section III, Diei has not adequately alleged a cause of action against him in his individual capacity.  Individual defendants are due to be dismissed from a lawsuit when they have "not done anything wrong (or, indeed, anything at all . . .)." *Hosty v. Carter*, 412 F.3d 731, 733 (7th Cir. 2005) (en banc). *See Ward*, 667 F.3d at 742 (affirming dismissal of claim against a university president "who did not play a meaningful role in [the student's] dismissal."); *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998) (dismissing university president).  Boyd cannot be sued for damages in his individual capacity based on a contention that he is responsible for everything at the University since, as President, he is in charge, absent a sufficient allegation that he had something to do with it. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021).

[9] All of Diei's "official capacity" claims in her Fifth Cause of Action are mooted by Diei's graduation and/or barred by the Eleventh Amendment as argued in Section I, *supra*.

Cir. 1988). Qualified immunity is both a defense to liability and an entitlement not to stand trial or face other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Once a defendant raises qualified immunity, "[a] plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019).

To determine whether an officer is entitled to qualified immunity, the court employs a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Causey v. City of Bay City*, 442 F.3d 524, 528 (6th Cir. 2006) (citation and footnote omitted).  Because both prongs must be satisfied by the plaintiff, courts are permitted to decide which prong of the qualified immunity equation to tackle first. *Cunningham v. Shelby County, Tenn.*, 994 F.3d 761, 764 (6th Cir. 2021) (citations omitted).  As outlined below, this Court can choose its own adventure as Diei cannot satisfy either prong.

### A.    Diei cannot prove that her constitutional rights have been violated.

As demonstrated in Section II, *supra*, Diei cannot meet the burden of the first prong of qualified immunity because her allegations fail to assert a cause of action that shows her constitutional rights were violated.

**B.      Diei's rights were not clearly established.**

Diei "has the burden of demonstrating that the law was clearly established at the time of Defendants' challenged conduct. *Yoder*, 526 F. App'x at 544 (citing *Andrews v. Hickman Cnty., Tenn.,* 700 F.3d 845, 853 (6th Cir. 2012)). Diei has not and cannot meet this burden as her right was not "clearly established" when Defendants acted in 2019[10] and 2020.

**1.      When is a right clearly established?**

U.S. Supreme Court precedent maintains that for a right to be clearly established, it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "When determining whether a constitutional right is clearly established, we look first to decisions of the Supreme Court, then to our own decisions and those of

---

[10] As noted in Defendants' Motion to Dismiss and conceded by Diei in her Response, any claims related to the 2019 investigation are time-barred by the applicable statute of limitations. *See Official Capacity Defs. Memo in Support of Mo. to Dismiss*, RE 25-1, Page ID #269-70; *Plf's Consolid. Opp. to Defs.' Mos. to Dismiss*, RE 32, Page ID #306 (Diei withdrew her claims related to the 2019 investigation by stating, "Diei has not based her claims on that [September 2019] investigation."). This was correctly noted by the district court's order stating, "The Court concludes that Diei's allegations regarding the 2019 investigation, which resulted in punishment, are not being advanced as a claim by Diei. Even if Diei were attempting to prosecute a claim based upon what happened between her and Defendants in 2019, any such claim would be time-barred." (*Order*, RE 69, Page ID# 623). Diei did not appeal this ruling.

other courts within the circuit, and then to decisions of other Courts of Appeal." *Andrews,* 700 F.3d at 853.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier, v. Katy*, 533 U.S. 194, 202 (2001). "If school administrators 'of reasonable competence could disagree' on the lawfulness of the action, Defendants are entitled to immunity." *Yoder*, 526 F. App'x at 544-45 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). "The unlawfulness of the school administrator's action 'can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.'" *Id.* (quoting *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003) (citations omitted).

### 2.    Student online, off-campus speech was not a clearly established First Amendment right in September 2020.

Diei requests that this Court abandon part of its prior reasoning in *Ward* and refuse to apply the principles of K-12 First Amendment cases to cases involving student speech on college campuses. (*Diei Brief*, COA RE 20, PageID #44). *Cf. U.S. v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) (noting that "[o]ne panel of this court may not overrule the decision of another panel; only the en banc court or the United States Supreme Court may overrule the prior panel."). In support of this argument, Diei cites to the U.S. Supreme Court and Eleventh Circuit's holdings in *Mahanoy*

*Area Sch. Dist. v. B.L.*, 141 S. Ct. 2045 (2021) and *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022), two cases that post-date Defendants' allegedly unlawful conduct. Diei's request to abandon established Circuit precedent only highlights that Boyd's and George's ability to regulate off-campus, online speech was not clearly established in September 2020. If this Court chooses to utilize K-12 precedent, as it has routinely done, the asserted unlawfulness in regulating Diei's off-campus, online speech was not clearly established in September 2020. If this Court chooses to abandon its reliance on K-12 precedent in applying these principles to college campus speech, then this about-face approach only demonstrates that Boyd and George could not have known the status of First Amendment speech in September 2020.

On the question of whether the right Diei is asserting here "was clearly established in light of the specific context of the case," the burden she must carry "[t]o overcome qualified immunity" is to "identify a case whose facts and holding would make 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Machan v. Olney*, 958 F.3d 1212, 1214-15 (6th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). "If reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies*." Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 695 (6th Cir. 2020). To be "clearly established," a right must be "'beyond debate.'" *Novak v. City*

*of Parma*, 932 F.3d 421, 434 (6th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "[C]learly established law should not be defined at a high level of generality" but, instead, "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (internal quotation marks omitted). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (alterations and internal quotation marks omitted).

Because "First Amendment parameters may be especially difficult to discern in the school context[,] . . . 'educators are rarely denied immunity from liability arising out of First-Amendment disputes.'" *Abbott*, 900 F.3d at 174   (quoting *Morgan v. Swanson*, 755 F.3d 757, 769 (5th Cir. 2014)). *See also Hosty*, 412 F.3d at 733 (qualified immunity for college dean in First Amendment case; "[m]any aspects of the law with respect to students' speech . . . are difficult to understand and apply").

Diei cites no relevant precedent forbidding schools from regulating off-campus, online speech by students that pre-dates Defendants' conduct in this case.[11]

---

[11] In its 2021 decision, nine months ***after*** the September 2020 incident of which Diei complains, the U.S. Supreme Court issued its opinion in *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038 (2021). This case, analyzing the extent of First Amendment protections to off-campus, online speech in the K-12 setting was the high court's first foray into this finite topic.   *Mahanoy* was the first case to give some parameters to public officials on how to look at this off-campus speech. However, the Court was clear to limit its holding and stated "We leave for ***future cases*** to decide where, when, and how these features mean the speaker's

As a result, Diei's rights were not "clearly established," and Boyd and George are qualifiedly immune.

Notably absent from Diei's brief is any mention of this Court's holding in *Yoder*.  In 2013, in *Yoder*, this Court affirmed the dismissal of claims against university administrators who dismissed a nursing student because of the content of her MySpace blog post. This Court held, "We find dispositive the absence of controlling authority that specifically prohibits Defendants' conduct. Because ***neither the Supreme Court nor a panel of our circuit has considered whether schools can regulate off-campus, online speech by students***…"  526 F. App'x. at 545 (emphasis added).[12]  In the present case, Diei cannot point to any controlling authority that prohibited Defendants' conduct in this case and therefore Boyd and George are entitled to qualified immunity.

Since *Yoder*, this Circuit has not addressed this issue again.  However, sister circuits have routinely held, as recently as 2019, that off-campus, online speech in the university setting was an unsettled area of law entitling school officials to qualified immunity.

---

off-campus location will make the critical difference. This case can, however, provide one example." *Mahanoy*, 141 S. Ct. at 2046 (emphasis added).

[12]This Court made this statement in *Yoder*, fifteen months ***after*** its ruling in *Ward*, the case upon which Diei contends her right was "clearly established."

In *Hunt v. Bd. of Regents of the Univ. of New Mexico,* 792 F. App'x. 595, the Tenth Circuit noted that "Off-campus, online speech by university students, particularly those in professional schools, involves an ***emerging area*** of constitutional law." *Id.* at 601 (emphasis added). After engaging in a lengthy analysis of First Amendment precedent from both the Supreme Court and Circuit court levels, the Tenth Circuit noted that at the time of its decision in 2019:

> [D]ecisions from our court and other circuits have not bridged the unmistakable gaps in the case law, including whether: (1) *Tinker* applies off campus; (2) the on-campus/off-campus distinction applies to online speech; and (3) *Tinker* provides an appropriate framework for speech by students in graduate-level professional programs, such as medical schools, *cf. Salehpoor v. Shahinpoor*, 358 F.3d 782, 787 & n.5 (10th Cir. 2004) (applying the public-employee analysis to speech by a graduate-level engineering student).

*Hunt*, 792 F. App'x. at 606. The *Hunt* court determined that the medical student had "failed to identify a case where [a medical school administrator] acting under similar circumstances as [the defendants in this case] was held to have violated the [First] Amendment" and that defendants were entitled to qualified immunity due to plaintiff's failure to prove that the student's constitutional rights were clearly established at the time of defendants' actions in 2012 and 2013. *Id.* (citation omitted). While *Hunt* focused on case law as of the time of the allegedly unlawful

acts, no clarity in this area of law emerged prior to Boyd and George's allegedly unlawful conduct in September 2020.[13]

In relying on *Hunt* and *Keefe* (Section II(B) *supra*), the district court held that "the Court has determined that the content, form, and context of her social media posts are not matters of public concern which are entitled to First Amendment protection."  (*Order*, RE 69, Page# 652).  The district court's application of the "matter of public concern" context, supported by case law, vividly shows that this area of law is not well-settled even to the extent that a district court judge – let alone a non-lawyer university official like Boyd or George – can be on fair notice of any clearly established rights. *See e.g.*, *Salehpoor v. Shahinpoor*, 358 F.3d 782, 787 & n.5 (10th Cir. 2004) (applying the public-employee "matter of public concern" analysis to speech by a graduate-level engineering student).

In *Hedrick v. W. Michigan Univ.,* No. 1:22-CV-308, 2022 WL 10301990, at *16 (W.D. Mich. Oct. 17, 2022), a district court held that university officials were entitled to qualified immunity because:

---

[13]Other Circuit Courts and district courts across the country found school administrators qualifiedly immune due to a lack of a clearly established right to the online, off-campus student speech.  *See Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.,* 942 F.3d 258 (5th Cir. 2019);  *Doninger v. Niehoff*, 642 F.3d 334 (2d Cir. 2011); *McKinney v. Huntsville School Dist*., 345 F. Supp. 3d 1071 (W.D. Ark. 2018); *Zimmerman v. Board of Trustees of Ball State University*, 940 F. Supp. 2d 875, 895-97 (S.D. Ind. 2013).

> Regarding Hedrick's First Amendment claims, even when construing the facts in a light most favorable to him, it was not clearly established that expelling [the student] from the university for sending a video to another student involving a display of firearms and a suggestion that he was shooting the recipient would violate his First Amendment rights. The limitations on *a university's ability to discipline such conduct are unclear.*

*Id.* (emphasis added). In *Hedrick*, the student's conduct occurred in September 2021 and the university's expulsion decision was rendered December 21, 2021. Even with the benefit of the Supreme Court's decision in *Mahanoy*, the district court found this right to regulate a student's online speech "unclear."

### 3. Diei has not met her burden in proving a clearly established First Amendment right in September 2020.

Diei relies on four cases to support her assertion that Diei had a clearly established right as "it is well settled in the Sixth Circuit that professional school administrators may not engage in viewpoint discrimination." (*Diei Brief*, COA RE 20, PageID #61). Diei relies on this Court's ruling in *Ward*, 667 F.3d 727, and the U.S. Supreme Court's rulings in *Reno v. ACLU*, 521 U.S. 844 (1997), *Packingham v. North Carolina*, 582 U.S. 98 (2017), and *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667 (1973). A careful review of these cases shows that these cases do not support what Diei suggests.

*Ward* does not stand for what Diei contends. In *Ward*, this Court squarely upheld the same kind of professionalism policy the College of Pharmacy has, one

that incorporates external professional standards for practicing members of the profession. This Court held that "[o]n its face, the [American Counseling Association's] code of ethics sets forth neutral and generally applicable policies." 667 F.3d at 738. What *Ward* turned on was the specific facts of that case about the university's inconsistent actions in the application of the professional standard. The university was guilty of "selective enforcement" (*id*. at 733) because it refused to allow the plaintiff, a student in a counseling degree program who had a faith-based objection to counseling a gay client, to refer a gay client to another counselor. The problem for the university was that the applicable professional code "expressly permits values-based referrals" (*id*. at 735), and there was evidence that the university did not in fact have a no-referral policy either on paper (the student manual actually allowed referrals, *id*. at 736) or in practice (there was an example of another student being allowed to refer a client, *id*. at 737). Accordingly, the court allowed the claim to go to the jury on the issue of whether the university's cited reason for action, an apparently non-existent no-referral policy, was a pretext for dismissing the student due to her "faith-based speech." *Id*. at 738. The Court did not create any "clearly established" right as Diei argues.

As to the cited Supreme Court cases, Diei makes the broad assertion that these cases support that Diei's online speech is protected online as much as it is offline and that administrators were on "fair notice" that that they could not punish Diei's

"indecent conduct or speech" dating back to the Supreme Court's 1973 ruling in

*Papish*.  These broad generalizations do not support a finding of a clearly established

right as "clearly established law should not be defined at a high level of generality"

but, instead, "must be particularized to the facts of the case." *White v. Pauly*, 580

U.S. at 79  (per curiam) (internal quotation marks omitted).   Diei has failed to meet

her burden, and Boyd and George are entitled to qualified immunity.

> **4.      Diei's right to not be subject to an investigation and vote of expulsion by George was not a clearly established First Amendment right in September 2020.**

Diei's Complaint alleges that "George's investigation and vote to dismiss Diei

from the College of Pharmacy in September 2020 were also retaliatory actions

against Diei because of her First Amendment protected speech, as more fully

discussed above." (*Complaint*, RE 1, PageID #28, ¶ 158).  As discussed in Section

II(C), a university has the right to investigate professional students with regard to

complaints about student conduct, even if that conduct is linked to a student's

speech.   Should this Court find otherwise, however, it would be counter to

established precedent, thus demonstrating that the right to not be investigated was

not clearly established in September 2020.

More importantly, George could not have been on fair notice that Diei had a

right to not be subject to George's vote to expel her.  As set forth in Diei's Complaint,

a Committee (not George alone) "investigated Diei's social media activity" and

"unanimously voted to expel her." (*Complaint*, RE 1, PageID #1, ¶ 3).  Yet, George is the only member of that Committee to be sued for an alleged violation of Diei's constitutional rights.  No clearly established law existed to show George that her actions were violative of Diei's rights when her vote: (1) was a non-final appealable decision; and (2) was made as part of a group committee action.  In fact, as set forth in Section II(A) *supra*, existing law would show George the contrary.  As a member of the academic community, George knew that her vote to expel Diei was subject to review and non-final, and was not on notice that the law forbade her from voting, as part of a committee on which she served, about what is and is not professionally appropriate conduct for a pharmacist.  Therefore, Diei's purported right to not have one member of the Committee vote to expel her was not clearly established in September 2020, and George is entitled to qualified immunity.

## IV. SHOULD THIS COURT DETERMINE IT HAS JURISDICTION OVER ALL OF DIEI'S CLAIMS, DIEI'S FIRST, SECOND, AND THIRD CAUSES OF ACTION FAIL AS A MATTER OF LAW.

### A. Diei's Third Cause of Action fails as Diei's First Amendment rights were not violated.

As discussed in Section II *supra*, because Diei cannot establish a violation of her First Amendment rights, her Third Cause of Action fails as a matter of law.

**B.      Diei's First and Second Causes of Action fail as UTHSC's Professionalism Rule is facially valid.**

The district court correctly found, "This Court does not find the UTHSC's professional policies are overbroad or vague." (*Order*, RE 69, PageID #629). After an analysis of applicable law, the district court correctly held that:

> [T]he Court does not find that the University's Professionalism Policy is overbroad or burdens more speech than necessary. The policy mirrors state statutes governing a widely regulated health profession; and the Court has already determined that under certain circumstances, the University may regulate on and off campus speech and conduct.

(*Order*, RE 69, PageID #641).  Diei contends that the "district [court] improperly considered materials outside the complaint over Diei's objection" – namely "the Defendants' 'Standards of the Health Professions.'" (*Diei Brief*, COA RE 20, PageID #29).  As aptly noted by the district court's Order, however "When a document is mentioned in the complaint and is a necessary part of the plaintiff's claim, the defendant may submit a copy of the document to the court as an attachment to a motion to dismiss." (*Order*, RE 69, PageID #623) (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999)).  Diei offers this Court no law to the contrary.

As to Diei's vagueness challenge, the district court relied on this Court's precedent, by stating "the Sixth Circuit in *Yoder* reiterated that the Court has rejected vagueness challenges 'when [a party's] conduct clearly falls within a statutory or

regulatory prohibition.'" (*Order*, RE 69, PageID #642).  As noted by the district court, this professionalism policy was based on the State of Tennessee's professional standards for pharmacists and pharmacy students.  (*Order*, RE 69, PageID #639). The district court correctly determined that "the Standards were not overly vague." (*Order*, RE 69, PageID#  42).  Defendants incorporate the district court's analysis and reasoning in support of their argument related to Diei's facial challenges to its policies as if set forth verbatim herein. (*Order*, RE 69, PageID #638-642).

## CONCLUSION

Defendants request that this Court affirm the district court's dismissal of Diei's claims. This Court lacks subject matter jurisdiction over Diei's claims seeking declaratory and injunctive relief.  Diei's remaining claims seeking monetary relief fail because Diei's allegations do not amount to violations of her First Amendment rights.  Alternatively, Boyd and George are qualifiedly immune.  Finally, should this Court deem it has jurisdiction over Diei's mooted claims, Defendants request that those claims be dismissed as Diei cannot prove that UTHSC's Professionalism Rule is facially unconstitutional or unconstitutional as applied.

Respectfully submitted this 18th day of January 2024.

s/ Caitlyn Luedtke Elam
Caitlyn Luedtke Elam (TN BPR #031108)
Associate General Counsel
UNIVERSITY OF TENNESSEE
505 Summer Place, UTT #1155
Knoxville, TN  37902
(865) 974-1653
caitlyn.elam@tennessee.edu
*Attorney for Defendants/Appellees Randy Boyd,*
*et al.*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,959 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365's Microsoft Word Version 2312 in Times New Roman (14 point) proportional type.

This 18th day of January 2024.

s/ Caitlyn Luedtke Elam
Caitlyn Luedtke Elam (TN BPR #031108)
Associate General Counsel
UNIVERSITY OF TENNESSEE
505 Summer Place, UTT #1155
Knoxville, TN  37902
(865) 974-1653
caitlyn.elam@tennessee.edu
*Attorney for Defendants/Appellees Randy Boyd, et al.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 19, 2024, an electronic copy of the

Appellee's Brief was filed with the Clerk of Court for the U.S. Court of Appeals for

the Sixth Circuit via the CM/ECF system.  The undersigned certifies that all parties

in this case are represented by counsel who are registered CM/ECF users and that

service of the brief will be accomplished by the CM/ECF system.

This 18th day of January 2024.

s/ Caitlyn Luedtke Elam
Caitlyn Luedtke Elam (TN BPR #031108)
Associate General Counsel
UNIVERSITY OF TENNESSEE
505 Summer Place, UTT #1155
Knoxville, TN  37902
(865) 974-1653
caitlyn.elam@tennessee.edu
*Attorney for Defendants/Appellees Randy Boyd,*
*et al.*

**ADDENDUM**

## I.    DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6 Cir. R. 30(g), Appellee hereby designates the following

documents from the District Court ECF/PACER system:

| RE # | Description | PageID # |
|------|-------------|----------|
| 1 | Plaintiff/Appellant's Complaint | 1-31 |
| 24 | Individual Capacity Defendants' Motion to Dismiss the Fourth and Fifth Causes of Action | 165-167 |
| 24-1 | • Memo. in Support of Motion to Dismiss | 168-196 |
| 24-2 | - *Exh. 1 to Memo. – Tenn. Comp. R. & Regs.1140-02-.01, et seq.* | 197-201 |
| 24-3 | - *Exh. 2 to Memo. – Tenn. Comp. R. & Regs.1720-3-5-.01, et seq.* | 202-203 |
| 24-4 | - *Exh. 3 to Memo. – UTHSC's Professional Rule* | 204-208 |
| 24-5 | - *Exh. 4 to Memo. – Diei's Honor Code Pledge* | 209-211 |
| 24-6 | - *Exh. 5 to Memo. – Diei 2019 Social Media Posts* | 212-218 |
| 24-8 | - *Exh. 7 to Memo. – Diei 2020 Social Media Posts* | 240-256 |
| 24-9 | - *Exh. 8 to Memo. – Declaration of Authenticity* | 257-259 |
| 25 | Official Capacity Defendants' Motion to Dismiss the First, Second, and Third Causes of Action | 260-261 |
| 25-1 | • Memo. in Support of Motion to Dismiss | 262-282 |
| 32 | Plaintiff's Consolidated Opposition to Defendants' Motion to Dismiss | 297-350 |
| 35 | Defendants' Consolidated Reply Memorandum in Support of Motions to Dismiss | 367-392 |
| 52 | Joint Filing Regarding Status Conference | 436-440 |
| 64 | Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction | 531-532 |

| 64-1 | • Memo. in Support of Motion to Dismiss | 533-545 |
|---|---|---|
| 67 | Plaintiff's Memorandum in Opposition to Motion to Dismiss All Claims for Declaratory and Injunctive Relief | 570-589 |
| 68 | Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction | 590-603 |
| 69 | Order Granting Motions to Dismiss | 616-642 |
| 71 | Judgment | 643 |
| 72 | Notice of Appeal | 644-646 |